LYON et al. v. MARINE, Collector of Customs.

(Circuit Court of Appeals, Fourth Circuit. May 23, 1893.)

No. 43.

1. EVIDENCE — JUDICIAL NOTICE — FACTS OF NATURAL HISTORY—CUSTOMS DUTIES.

In customs duties cases the court will take judicial notice of the general facts of natural history, including the fact that the unimproved native sheep of all countries produce fleeces whose value is depreciated more or less by the undue quantity of hair growing on the belly, flanks, and parts of the thighs and arms of the animals.

2. CUSTOMS DUTIES—CLASSIFICATION—EVIDENCE—APPEAL.

Certain bales of merchandise purporting to be the fleeces of the unimproved North China sheep were imported from Shanghai, the papers being regular, and free from all question of fraud. The goods consisted of very low grade wool, containing a large mixture of coarse, short hair, and cost three cents a pound in Shanghai, and were worth but nine cents in Baltimore. The importer testified that he had lived in China, and had dealt in the fleeces of the China sheep, and that the importation consisted of such fleeces. A customhouse expert, however, testified that the hair in the fleeces was goat's hair, and on this evidence the collector and board of appraisers placed the importation in class 2, par. 377, Act Oct. 1, 1890, and assessed a duty of 12 cents a pound, and this conclusion was sustained by the circuit court. *Held*, that an appellate court, taking judicial notice of the fact that a large proportion of hair grows on the bodies of unimproved sheep, would find that the whole importation consisted of the fleece of the sheep, and therefore belonged to class 3, (paragraph 378,) and was dutiable at 32 per cent. ad valorem.

Appeal from the Circuit Court of the United States for the District of Maryland.

This is an appeal from a decision of the board of general appraisers at the port of New York upon an appeal to them from the classification by the collector of the port of Baltimore, and from the rate of duty imposed by him upon certain merchandise imported by Lyon, Hall & Co., from Shanghai, China, by way of London, per steamship British Crown, September 26, 1891. Reversed.

John F. Preston, for appellants.
John T. Ensor, U. S. Atty., for appellee.

Before GOFF, Circuit Judge, and DICK and HUGHES, District Judges.

HUGHES, District Judge. Under the existing tariff act imported wools and hairs are divided into three classes. 26 Stat. 594. In the first class are placed the wools of the merino and of the various downs sheep of English breed, and wools from Australia and other countries, named in the clause. These are all wools of fine fiber. Upon these wools a duty of 11 cents per pound is levied. This class of fine wools does not come under consideration in the case at bar. See paragraphs 376, 384. In the second class are placed the wools of improved sheep, including long combing wools, and the hairs of higher breeds of camels, of the alpaca, and the better breeds of goats, and of other animals producing the better grades of hair. On these a duty of 12 cents per pound is imposed. See paragraphs 377, 384. In the third class are placed the coarse fleeces of the unimproved sheep of certain South American states, Smyrna, and Russian camel's hair, and such coarse wools as have been usually imported from Turkey, Greece, Egypt, Syria, and elsewhere, excepting improved wools. The duty imposed on these inferior and cheap substances is 32 per cent. ad valorem. See clauses 378, 385.

The appellants, Lyon, Hall & Co., of Baltimore, importers of wools and merchandise, received in that city on the 26th of September, 1891, from Shanghai, China, by the steamship British Crown, an invoice of various goods, embracing eight bales of the fleeces of North China unimproved sheep, composed of both wool and hair. The shipping papers relating to those bales, the bill of lading, invoice, declaration, and shipping certificate were regular, and free from all question of fraud, and those from Shanghai were authenticated by the deputy consul general of the United States at that port.

The testimony of J. Crawford Lyon, one of the appellants, was that he was a dealer in the products of North China; that he had been so for two years; that he had been a resident of China, and had had experience there as a dealer in the fleeces of China sheep; that the cost at Shanghai of the contents of the eight bales that have been named was three cents a pound; that the stuff was worth not more than nine cents in Baltimore; that it was

ordered from and shipped by one of the most responsible firms in Shanghai; that it was taken from the pelts of China sheep, and the hair embraced in the fleeces was of the lowest possible value, being assimilated with the hair of slaughterhouses and tanyards.

The question of what duty should be required on these bales was referred by the collector at Baltimore to a board of appraisers. Under the influence of the testimony of an expert employed in and sent from the customhouse in New York, the board of appraisers at Baltimore decided that the duty on the cheap, inferior, and offensive stuff contained in these bales should be the same as on the highest grade of improved wools and hairs described in class 2, par. 378, of the tariff act of 1890; that duty being 12 cents per pound. The value of the stuff being not more than 9 cents a pound, this duty would be 133 per cent. ad valorem, instead of the 32 per cent. imposed by the act on inferior wools and hairs, and would be prohibitive. Appeal was taken from this ruling of the board of appraisers to the circuit court of the United States for the district of Maryland, which affirmed the decision of the appraisers. The case is here by appeal of the importing house from the decision of the circuit court of the Maryland district.

The United States attorney, who represents the appellee, avers that "the question in the case is—First, whether this merchandise is goat hair, or hair of other like animals, or is the hair of the North China sheep, which, the appellants claim, is not an animal like the goat; and, second, whether the packages contain goat hair mixed with the product of the China sheep." The honorable counsel then contends on behalf of the appellee that the sheep is an animal like a goat, and that the hair of the North China sheep is to be subjected, not only to the same tax as the hair of goats, but as that imposed upon the hair of the alpaca and superior species of goats contemplated by paragraph 377 of the act of 1890, class 2. The experts on whose testimony the decision below was based seem to assume that the fleeces of sheep do not contain hair. The writers on sheep, on the contrary, treat the hair which grows upon the bodies of unimproved sheep as the principal object to be removed by crosses with improved breeds. The native sheep of the United States, the native sheep of all countries, produce fleeces whose value is depreciated more or less by the undue quantity of hair contained in them, sheared from the belly, flanks, and parts of the thighs and arms of the animal. One of the aims in improving native sheep by judicious crossing is to reduce the percentage of this deleterious product. The native sheep of the United States and of all the countries named in paragraph 378, page 594, (class 3,) of the tariff act of 1890 have a moderate percentage of hair in their fleeces. This is common knowledge, taught by all text-books on sheep, and within the judicial cognizance of the courts. The general facts of natural history are also within the judicial cognizance.

The theory on which the experts testified in this case—a theory derived wholly from their own surmises and preconceptions—is

that unimproved sheep do not produce hair, and that, if hair is found in their fleeces, it is necessarily goats' hair; and, in this case, not only goat's hair, but goat's hair of the high grades contemplated by paragraph 377. Counsel for appellee insists that, though this may be a mistake, and though the hair in the packages under consideration be the hair of sheep, yet, inasmuch as the sheep is a "like animal" to a goat, therefore the hair of the North China sheep is subject to the high tax imposed upon the high-grade hair of the Arabian camel, and the alpaca, and their like.

But the sheep, in respect to its fleece, is not a "like animal" to the goat. In respect to its fleece, the sheep is almost sui generis In that respect it differs wholly from the goat, and from almost every other known animal. In respect to their coats, the horse, the ox, the hog, the dog, the cat, the deer, the fox, the donkey, and the monkey are each and all more like the goat than the sheep. When experts undertake to assimilate the fleeces of sheep to the all-hair coatings of the goat, they abandon fact, and resort to mere surmise. The substance which is the subject of this suit is the lowest grade of sheep's fleeces, combined of mean wool and coarse, short sheep's hair; and yet the experts whose theories induced the decision of the board of appraisers appealed from have persuaded them that this wretched substance is liable to be taxed at the same rate with the highest qualities of the wools of improved sheep, and of combing wools, and of the fine hairs of the Asiatic camel, and of the alpaca and the finely coated goats. Such a decision is contrary to the reason of the law and the justice of the case. The policy of congress was as simple as obvious. The finest grades of wool of short fiber, represented by the fleeces of the merino sheep and the sheep bred originally on the several downs of England, and the sheep of the other countries named in paragraph 376, are taxed 11 cents a pound. Wools of long fiber, from improved Cotswolds and like highly-bred sheep, and the fine hairs of camels, alpacas, and goats of high breed, most of them exceeding in value the fine wools of the merino class, are subjected to the higher duty of 12 cents. Finally, wools and hairs from the sheep described in paragraph 378, all more or less inferior in value to those of classes 1 and 2, most of them known commercially to be almost as cheap in value and inferior in quality as the repulsive stuff filed as exhibits in this case, are subjected to an ad valorem duty equal to one-third their market value, whatever that may be. In accordance with this obvious policy of the tariff act of 1890, we are of opinion that the cheap stuff which is the subject of this litigation is not liable to the tax imposed upon the most valuable wools and hairs known to commerce; but is liable to the duty of 32 per cent. ad valorem imposed upon all inferior wools and hairs sold in the markets at the lowest range of prices.

A decree will be entered to that effect, and reversing the decree below.